# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES,**

        **Plaintiff,**

v.                                                    Case No. 6:19-mc-48-ORL-78GJK

**JOSE BATISTA DO NASCIMENTO,**

        **Defendant.**

## ORDER

This cause came before the Court on a Detention Hearing held on October 30, 2019. Defendant has requested bond pending his extradition hearing.

**I.    BACKGROUND.**

In 2012, Defendant was convicted of the attempted murder of his wife's alleged paramour in Brazil by an unknown gunman who posed as a mail courier and shot the victim multiple times. Defendant attended his trial in Brazil. Defendant was sentenced to ten years imprisonment. Defendant appealed his conviction and sentence and returned to the United States after his trial. Defendant exhausted all appeals and the court in Brazil issued a warrant for his arrest in 2014. An initial request for extradition was submitted to the United States Department of State on July 15, 2015, indicating Defendant was imprisoned in Washington, D.C. Doc. No. 1-1 at 3, 5. On August 16, 2018, a supplemental request for extradition was submitted to the Department of State. Doc. No. 1-1 at 3, 6. On October 1, 2019, a Complaint was filed for the extradition of Defendant to Brazil based on the supplemental extradition request submitted by the government of Brazil to the Department of State. Doc. No. 1. On October 3, 2019, an arrest warrant was issued. Doc. No. 4.

On October 7, 2019, Defendant was arrested in Kissimmee, Florida. Doc. No. 11. Defendant is currently being detained at the Orange County Jail.

On October 30, 2019, a Detention Hearing was held before the undersigned. Defendant requests release pending his extradition hearing based on a confluence of special circumstances including his medical conditions, the adequacy of care he is receiving while detained, the length of time it will take to extradite him, and the length of time it has taken Brazil to seek extradition. Defendant and his son Bruno Nascimento testified regarding Defendant's health issues and concerns regarding the adequacy of his care while incarcerated. Bruno also testified about the prison conditions in Brazil. A letter from an attorney in Brazil and certain articles were introduced.

**II.     APPLICABLE LAW.**

Extradition is a diplomatic process, neither civil nor criminal, and it is governed by the relevant extradition treaty and the federal extradition statute. 18 U.S.C. §§ 3181-3196; *In re Headley*, No. 18-mc-81148, 2018 U.S. Dist. LEXIS 174201, at *18 (S.D. Fla. Oct. 10, 2018); *In re Gohir*, No. 2:14-mj-314, 2014 U.S. Dist. LEXIS 69769, at *18 (D. Nev. May 21, 2014). There is a presumption against bail in an extradition case because the United States has an obligation to deliver the person after he is apprehended, and "granting bond could make that obligation impossible to fulfill." *In re Headley*, 2018 U.S. Dist. LEXIS 174201, at *19; *Wright v. Henkel*, 190 U.S. 40, 62-63 (1903). As such, the Bail Reform Act does not apply to extradition proceedings. 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2); *In re Headley*, 2018 U.S. Dist. LEXIS 174201, at *19. Instead, the burden rests with the defendant to show that he is: 1) neither a flight risk nor a danger to the community; and 2) special circumstances warrant release. *Leiva v. Wilson*, No. 17-23938-CIV, 2018 U.S. Dist. LEXIS 229154, at *7 (S.D. Fla. Aug. 27, 2018); *In re Headley*, 2018 U.S. Dist. LEXIS 174201, at *20-21; *United States v. Valentino*, No. 4:18-mj-146, 2018 U.S.

Dist. LEXIS 79745, at *6 (S.D. Tex. May 11, 2018); *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 472-73 (S.D. Tex. 2010). Of the three components, those most critical to this analysis are whether there is a risk of flight and whether special circumstances exist. *In re Extradition of Garcia*, 761 F. Supp. 2d at 474-75 (compiling cases and noting that some courts consider "danger to the community" in a cursory fashion, some courts fail to discuss it after noting it as an issue, and still others do not address it all).

The determination of special circumstances is left to the sound discretion of the trial judge. *Valentino*, 2018 U.S. Dist. LEXIS 79745, at *7 (citing *United States v. Ramnath*, 533 F. Supp. 2d 662, 666 (E.D. Tex. 2008)). "Special circumstances can arise under a variety of conditions, or by virtue of a combination of conditions that taken together create a compelling case for release on bail." *Id.* at *6. Special circumstances may include an appellant's high probability of success on substantial claims, a serious deterioration of health while incarcerated, or an unusual delay in the appellate process. *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989). Other considerations include the age of the defendant, availability of bail in the requesting state, likelihood of defendant being found non-extraditable, and deprivation of religious practices while incarcerated. *Valentino*, 2018 U.S. Dist. LEXIS 79745, at *7. Special circumstances will be found only where justification for release is clear. *In re Headley*, 2018 U.S. Dist. LEXIS 174201, at *21. "Courts consistently agree that special circumstances are supposed to be limited to the most extraordinary circumstances and cannot involve factors applicable to all potential extradites." *Id.* at *19-20 (quoting *In re Shaw*, No. 14-mc-81475, 2015 U.S. Dist. LEXIS 18376, at *14 (S.D. Fla. Feb. 6, 2015)).

While a defendant bears the burden of demonstrating both special circumstances and no risk of flight, there is no consensus on the appropriate standard of persuasion -- preponderance of

the evidence or clear and convincing evidence. *Compare In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1215 (D. Nev. 1993) (finding that the Ninth Circuit adopted a heightened standard of proof in *Salerno*); *In re Extradition of Nezirovic*, No. 7:12-mc-39, 2012 U.S. Dist. LEXIS 165136, at *11 (W.D. Va. Nov. 19, 2012) (finding that the majority of courts have adopted the clear and convincing standard and finding the higher threshold created by special circumstances and risk of flight necessitates a higher standard of persuasion)[1] *with In re Garcia*, 761 F. Supp. 2d at 474-75 (there is a negligible minority of courts that have adopted the preponderance of the evidence standard); *In re Santos*, 473 F. Supp. 2d 1030, 1035 n. 4 (C.D. Cal. 2006) (finding that there was no reason to read a heightened burden of persuasion into these cases). The court in *Nacif-Borge* observed that the plain meaning of "special circumstances" and the language used by the courts in applying the special circumstances standard justifies the application of the clear and convincing standard. 829 F. Supp. at 1215. The court in *In re Santos* rejected the reasoning in *Nacif-Borge* and applied a preponderance of the evidence standard, essentially finding that the qualitatively

---

[1] As the court explained more fully in *Nezirovic*:

> Given that bond is to be rare, the heightened burden of clear and convincing evidence is the sounder approach. As to risk of flight, it is even more apparent that the clear and convincing evidence standard should apply. In an international extradition matter, "our nation has important interests in (1) fulfilling its legal and binding obligations under its treaties with foreign governments, (2) avoiding any international embarrassment if our country were unable to fulfill those obligations, and (3) preventing any circumstances that would lead to potential reciprocal noncompliance by foreign governments." Garcia, 761 F. Supp. 2d at 475 (citing Wright, 190 U.S. at 62; Ramnath, 533 F. Supp. 2d at 665). The release of an international fugitive who then successfully fled could seriously mar the reputation of the United States. Even assuming the fugitive was captured after fleeing, "the regaining of the custody of the accused obviously would be surrounded with serious embarrassment." Wright, 190 U.S. at 62. Moreover, as the Government notes, any forfeiture of bail by an absconding fugitive would leave the requesting country "with neither compensation nor remedy." (Dkt. No. 31 at 15.) As the Supreme Court has put it, "[t]he enforcement of the bond, if forfeited, would hardly meet the international demand." Wright, 190 U.S. at 62. The Court finds, based upon these considerations, that Neziorvic must show that he poses no risk of flight by clear and convincing evidence.

2012 U.S. Dist. LEXIS 165136, at *12-13.

different requirements of "special circumstances" did not necessitate a high standard of persuasion as well. 473 F. Supp. 2d at 1035 n. 4  However, the court noted that *Nacif-Borge*'s analogy to the Bail Reform Act was misplaced in *Santos* because Santos had not been criminally convicted and two of the warrants issued for his arrest had been invalidated by Mexican courts. *Id.*  The Court will apply the clear and convincing standard as it is the majority approach, but even if preponderance of the evidence was the applicable standard, Defendant has failed to satisfy it.

### III.  ANALYSIS.

Defendant cites to three special circumstances that support his claim for release pending his extradition hearing: 1) his health and the medical care he is receiving while incarcerated; 2) Brazil's delay in seeking his extradition; and 3) the length of time it will take for the extradition process to be completed.  Defendant also argues that he is not a flight risk or a danger to the community.

#### A. <u>Defendant is a flight risk and danger to the community.</u>

Defendant is 65 years of age, was born in Brazil, but is a U.S. citizen.  Defendant moved to Miami, Florida in 1991 and then to Orlando, Florida in 2014.  Defendant resides with his current wife and her two minor children in Kissimmee, Florida.  Defendant has three children from previous relationships who reside in: Brazil; San Diego, California; and Miami, Florida.  Defendant does not have a passport as it was seized for child support arrearages.  Defendant works as a driver for Uber and Lyft.

Defendant has resided in Florida since 1991 and has ties here.  Defendant traveled to Brazil for his trial before returning to Florida.  Defendant's appeals are exhausted and he is facing a ten year prison sentence in Brazil that could exceed his remaining life span.  Defendant provided testimony and evidence regarding the substandard prison conditions in Brazil, which would

provide a reason for Defendant to flee rather than submit to extradition at this point. The Court finds that Defendant poses a risk of flight that cannot be eliminated through any release conditions. *See In re Garcia*, 761 F. Supp. 2d at 476 (defendant's statement that he would be killed if extradited to Mexico and faced a lengthy prison sentence if convicted of murder constituted a flight risk).

With respect to danger to the community, Defendant has been convicted of attempted murder. Even though there are no other indications of dangerousness, Defendant's conviction standing alone renders him a danger to the community. However, even if Defendant was not a flight risk and was not a danger to the community, he has failed to present sufficient evidence of special circumstances.

> B. Neither Defendant's health nor the adequacy of care at the jail rise to the level of special circumstances.

Defendant testified he suffers from multiple ailments including problems with his vision, stomach, back, kidneys, heart, diabetes, prostate, and high blood pressure. Defendant testified he has been vomiting every day since his incarceration and has lost ten pounds in twenty days because he is no longer on the strict diet his doctor prescribed. Defendant testified that he was taking seven medications every day prior to his arrest but he is not being given all of his medications in jail, although he could not identify all medications he takes, nor which medications he is not receiving. Defendant also testified that the soap used at the jail bothers his right eye, he had previously been using a special soap, and he has vision issues related to prior Lasik surgeries. Defendant claims he is not receiving proper medical treatment in jail and requires emergency surgery but his counsel argued none of his conditions were immediately emergent. Bruno, Defendant's son, testified that he is concerned about the adequacy of his father's care while incarcerated.

A defendant's health, and conditions while incarcerated that affect his health, may constitute special circumstances. *United States v. Taitz*, 130 F.R.D. 442, 446 (S.D. Cal. 1990); *In*

*re Rouvier*, 839 F. Supp. 537, 542 (N.D. Ill. Oct. 22, 1993). In *Taitz*, defendant had allergic reactions to corn and corn sweeteners, substances common to most of the food at the correctional facility where he was housed. 130 F.R.D. at 446. He also experienced allergic reactions to the laundry detergent used to clean inmates' clothes causing him rashes. *Id.* However, in *Taitz*, the court's consideration of this circumstance stemmed more from the length of time the extradition process would take, given the underlying issues, and consequently, how long Taitz would be subject to these issues, as well as his inability to practice his religion as an Orthodox Jew. *Id.* at 446-47. Diabetes, digestion problems, prostate problems, and high blood pressure do not necessarily constitute special circumstances because those conditions in and of themselves are not life-threatening. *In re Huerta*, No. H-08-342M, 2008 U.S. Dist. LEXIS 48524, at *6 (S.D. Tex. Jun. 23, 2008). In *Huerta*, the court observed that while such conditions were unquestionably serious, they were not "so novel or complex as to be beyond the capacity of federal authorities to manage" while Huerta was in custody. *Id.*; *see also In re Rouvier*, 839 F. Supp. at 542 (citing *Nacif-Borge*, 1993 U.S. Dist. LEXIS 11252, at *19) (no special circumstances where defendant's medical condition could be controlled by daily medication because defendant failed to demonstrate that there was no constitutionally acceptable treatment that can be provided while he is imprisoned); *Bolanos v. Avila*, No. 09-1208, 2009 U.S. Dist. LEXIS 87991, at *11 (D.N.J. Sept. 24, 2009) (noting that the mere availability of better medical treatment in a private medical setting in not sufficient to overcome presumption against bail). However, in *Huerta*, the court found that co-defendant Ulrich's health condition, including a life-threatening chronic heart condition, supported by his cardiologist's statement that "Mr. Ulrich is chronically-ill, and has multiple

morbidities" constituted a sufficiently special circumstance.[2] 2008 U.S. Dist. LEXIS 48524, at *12.

Even accepting that Defendant suffers from the serious health conditions which he describes, Defendant has presented no persuasive evidence that these conditions are chronic, life-threatening, and cannot be managed by the Orange County Jail. Defendant's own testimony was conclusory and his testimony regarding the severity of his symptoms and the need for immediate, emergency medical treatment was not credible. Bruno's testimony, while heartfelt, was similarly generalized and conclusory. Defendant provided no medical records showing what treatment is medically necessary for him, what care the Orange County Jail is refusing to provide, and the impact of the same. The same can be said about his required diet, which he testified he is no longer following, but provided little testimony as to what that exact diet that would be. Again, there is no indication other than his own testimony that it is medically necessary to restrict his diet, in what ways, and whether the jail can accommodate any bona fide request to do so. The Court finds that Defendant has not demonstrated his condition is so serious or life-threatening that "no constitutionally acceptable treatment can be provided while he is incarcerated." *In re Rouvier*, 839 F. Supp. at 542 (citing *Nacif-Borge*, 1993 U.S. Dist. LEXIS 11252, at *19). Thus, Defendant's health condition does not rise to the level of a special circumstance, either independently or in conjunction with Defendant's other claims.

---

[2] Bond was ultimately issued to both defendants in *Huerta* based on the weakness of the underlying case. *Id.* at *14. Ulrich's extremely poor health was cited as a separate and independent special circumstance justifying his release on bond. *Id.*

C. Brazil's "delay" in seeking extradition does not constitute a special circumstance.

Defendant's appeals process concluded in 2013. A warrant for his arrest was issued in 2014. In 2015, the Brazilian government sought extradition but apparently mistakenly believed Defendant was incarcerated in Washington, D.C. Although some courts have considered the length of time between a crime and a request for extradition,[3] the passage of time between the initial extradition request and the successive extradition request in this case, without more, does not constitute a special circumstance. Defendant presents no evidence that Brazil intended to abandon its attempt to extradite him, that Brazil was dilatory in its attempts to seeks extradition, nor any evidence that Defendant has somehow been harmed by this delay after he was convicted and his appeals exhausted. To the contrary, Defendant has continued to remain free to live and work in the United States despite acknowledging that he understood he needed to go back to Brazil and serve his sentence. Thus, this claim does not rise to the level of a special circumstance, either independently or considered in conjunction with Defendant's other claims.

D. There is no indication extradition proceedings will be extraordinarily lengthy.

Defendant's claim that the extradition process itself will be so lengthy as to necessitate bond is speculative at best. Defendant offers no reason why extradition should be expected to take longer than usual. When this circumstance has been considered, it has been considered in the context of a problem, for example, whether an underlying charge was covered in the subject treaty. *Taitz*, 130 F.R.D. at 445-46. The court in *Taitz* faced an extradition case of exceptional complexity

---

[3] *See Nezirovic v. Holt*, 990 F. Supp. 2d 594, 603 (D. W. Va. 2013) (discussing circumstances upon which the passage of time may rise to the level of a "special circumstance"). In *In re Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006), the court granted bond in part because Mexico had not made a priority of prosecuting the underlying offense and thus there was a lack of diplomatic necessity.

in which the Court foresaw habeas proceedings and appeals that could draw the case out as long as two years. *Id.* at 446. Also, there was evidence South Africa permitted bail in a similar extradition case. *Id.* at 447. Here, as the Government notes, 18 U.S.C. § 3188 gives the United States two months to return Defendant to Brazil. Further, this case bears none of the unusual circumstances identified in *Taitz* with respect to the extradition proceeding itself. Thus, this claim does not rise to the level of a special circumstance, either independently or considered in conjunction with Defendant's other claims.

## IV. CONCLUSION.

Defendant has provided no special circumstances that would clearly justify his release pending his extradition hearing.

Accordingly, it is **ORDERED** that Defendant's request for bond is **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida, on November 8, 2019.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties